# Applicability of Ineligibility Clause to Appointment of Congressman Tony P. Hall

The Ineligibility Clause of the Constitution would not bar the President from appointing Congressman Tony P. Hall as United States Representative to the United Nations Agencies for Food and Agriculture, with the rank of Ambassador.

May 30, 2002

MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

You have asked for our opinion whether the Ineligibility Clause, U.S. Const. art. I, § 6, cl. 2, would bar the President from appointing Congressman Tony P. Hall as United States Representative to the United Nations Agencies for Food and Agriculture, with the rank of Ambassador. As we previously advised you orally, we believe that the Ineligibility Clause would not bar the appointment.

Under the Ineligibility Clause, "[n]o Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time." U.S. Const. art. I, § 6, cl. 2. Congressman Hall's current term began January 3, 2001, s*ee* U.S. Const. amend. XX, § 1; 146 Cong. Rec. D1228 (Dec. 15, 2000), and he thus cannot be appointed to an office "the Emoluments whereof" were raised after that date.[1]

The office of United States Representative to the United Nations Agencies for Food and Agriculture was created under 22 U.S.C. § 287(d) (2000), a section of the United Nations Participation Act providing that the President may appoint "such . . . persons as he may deem necessary to represent the United States in organs and agencies of the United Nations." Under 22 U.S.C. § 287(g), "[a]ll persons appointed in pursuance of authority contained in this section shall receive compensation at rates determined by the President upon the basis of duties to be performed but not in excess of rates authorized . . . for chiefs of mission, members of the Senior Foreign Service, and Foreign Service officers occupying positions of equivalent importance." The President has delegated to the Secretary of State his authority to fix this compensation, *see* Memorandum for the Secretary of State, from President William J. Clinton, *Re: Delegation of Authority on Rates of Compensation for U.S. Representatives to the United Nations*, 62 Fed. Reg. 18,261 (Apr. 15, 1997), and the Secretary of State in turn has delegated such "manage-

---

[1] We do not address here whether a rollback of a salary increase can satisfy the Ineligibility Clause. *Compare Appointment of Member of Congress to a Civil Office*, 3 Op. O.L.C. 286, 289-90 (1979) (accepting the validity of such rollbacks), *with* Memorandum for the Counselor to the Attorney General, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, *Re: Ineligibility of Sitting Congressman to Assume a Vacancy on the Supreme Court* (Aug. 24, 1987) ("1987 Opinion") (rejecting the validity of such rollbacks).

ment-related functions" to the Under Secretary of State for Management, *see* Delegation of Authority No. 198 (Sept. 16, 1992).

The last occupant of the office was former Senator George S. McGovern, who left the position on September 27, 2001.[2] At the beginning of Senator McGovern's service, the responsible official at the State Department assessed the "duties to be performed" by Senator McGovern and determined that he should receive the pay of a "Minister-Counselor" in the Senior Foreign Service compensated at a rate equivalent to Level 5 of the Executive Schedule ("FE-MC 5," which is equivalent to "ES 5"). *See* Exec. Order No. 12293, § 4, 3 C.F.R. § 137 (1982), *reprinted in* 22 U.S.C. § 3901 note (2000). On two recent occasions, Presidents have exercised their authority under 5 U.S.C. § 5382 to raise the salary specified for Level 5 of the Executive Schedule, to which the FE-MC 5 pay is tied. The first increase was ordered December 23, 2000, and took effect January 14, 2001, Exec. Order No. 13182, 3 C.F.R. § 330 (2001); the second was ordered December 28, 2001, and took effect January 13, 2002, Exec. Order No. 13249, 3 C.F.R. § 832 (2002). We will assume that one or both of these increases should be deemed to have occurred during the time for which Congressman Hall was elected.[3] If the "Emoluments" of the office of United States Representative to the United Nations Agencies for Food and Agriculture include an FE-MC 5 salary, then that office is one "the Emoluments whereof . . . have been encreased" during the time for which Congressman Hall was elected.

We do not believe, however, that the FE-MC 5 pay or any other salary can properly be seen as the emoluments *of* this office. On the contrary, the office itself has no fixed emoluments. The President or his delegate is free to set *any* level of pay he deems suitable for the duties he expects the particular appointee to perform, as long as the pay does not exceed the statutory ceilings. Therefore, if appointed, Congressman Hall will not necessarily succeed to the same compensation that Senator McGovern was receiving. Indeed, the instrument that directed how much Senator McGovern was to be paid was a "Notification of Personnel Action," which was personal to him, rather than an order referring generally to the pay of the office. Section 287(g) calls for the President or his delegate to set the pay of

---

[2] As we understand the facts, only one other person—Millicent Fenwick, during the 1980s—has held the position of United States Representative to the United Nations Agencies for Food and Agriculture, with the Senate-confirmed rank of Ambassador. We understand that the paperwork showing how her pay was fixed no longer exists. For the facts set out in this memorandum, we rely on the Department of State.

[3] Arguably, the relevant date for the first increase was the date on which the President issued his order, which preceded Congressman Hall's current term. *But cf*. *Member of Congress—Appointment to Civil Office Prior to Pay Increase*, 42 Op. Att'y Gen. 381 (1969) (under a statute providing for an effective date after a report to Congress and a waiting period to allow congressional action, the relevant date was the date on which the increase took effect). Moreover, because the office was vacant at the time of the second increase and because (as explained below) the pay of the office must be set each time a new appointee assumes the office, arguably the pay of the office was not tied to the FE-MC 5 rate, or any other rate, at the time of the second increase.

"[a]ll persons appointed in pursuance of authority contained in" section 287, and this compensation pertains to the "person[]," not to the office.

This is not a case in which the President raised the pay for a class of offices, in which the office in question was included. *Cf. Appointment of Member of Congress to a Civil Office*, 3 Op. O.L.C. at 286-87 (judicial salaries); 1987 Opinion, *supra* note 1, at 1 n.1 (same); *Member of Congress—Appointment to Civil Office Prior to Pay Increase*, 42 Op. Att'y Gen. 381 (1969) (salaries of cabinet officers). Nor even is it a case in which the statute calls on the President to set the salary for a specified office. *Cf.* Memorandum for the Files, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Appointment of Congressman to the Office of Director of the Office of Economic Opportunity* at 1 (Apr. 14, 1969) ("1969 Memorandum") (third attachment to Letter for Edward L. Morgan, Deputy Counsel to the President, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel (Apr. 14, 1969)) (the statute required the President to fix the salary of the Director). Instead, the President is to fix the salary of a "person[]" appointed to an office that the President largely defines. Under the statute here, the President or his delegate is to set a salary each time a person is appointed.

To be sure, it would not be an unnatural reading of the Ineligibility Clause if the salary paid to Senator McGovern were considered the emoluments of the office of United States Representative, within the meaning of the Clause. That salary was, after all, actually paid for Senator McGovern's work in the office. Nevertheless, we believe that, on the better view of the Ineligibility Clause, this salary does not constitute the emoluments *of* the office because the office does not continue to carry that salary after Senator McGovern's resignation. The President or his delegate will have to act affirmatively to set a salary when Senator McGovern's successor is appointed and will have the discretion to set the salary for the next occupant of the office at any rate that does not exceed the salary cap.[4] The Ineligibility Clause was designed to limit the danger that offices might be created or their emoluments increased "in order to gratify some members" of Congress, 1 *The Records of the Federal Convention of 1787*, at 380 (Max Farrand ed., rev. ed. 1966) (statement of James Madison), but this danger, insofar as it arises from action taken with respect to an office before a member's appointment, exists only if the prior action would carry over to the office when the member assumes it. Here, although prior action raising Senator McGovern's salary arguably might

---

[4] In our 1969 Memorandum, the President was to fix the compensation of the Director of the Office of Economic Opportunity ("OEO") at a level not exceeding that for the Director of the Bureau of the Budget. The Budget Director's salary had been raised during the time for which a prospective Director of OEO had been elected to Congress, and the 1969 Memorandum found that if the Director of the OEO received a salary at the new ceiling, the Ineligibility Clause would be violated. *Id*. at 1-2. We take it, however, that once the President had set a salary for the office of OEO Director, that salary would have continued to apply to successors in the office, unless the President acted to change his earlier decision.

lead to some expectations about the salary to be paid to Congressman Hall, *see* 119 Cong. Rec. 38,331 (1973) (letter of then-Professor Stephen G. Breyer, arguing that past salary increases, even if not given to an appointee, make future increases likely), this expectation is, in the end, a matter of speculation. Until the President acts or his delegate acts, there are no emoluments attached to the office in question.

JAY S. BYBEE
*Assistant Attorney General*
*Office of Legal Counsel*